UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MELANIE A. M. HINDS, on behalf of herself,  :
and all similarly situated employees,        :
                                             :
                      Plaintiff,   :
                                             :
                                             :
              - against -      :
THE HOSPITAL FOR SPECIAL SURGERY,            :
a/k/a New York Society for the Relief of the :        Case No. 11 Civ. 3126 (AKH)
Ruptured and Crippled, Maintaining The       :
Hospital for Special Surgery,                :
                                             :
                                             :
                 Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL ARGUMENT ........................................................................................................... 3

I.     SUMMARY JUDGMENT MUST BE GRANTED WHERE, AS HERE, THERE
EXIST NO MATERIAL ISSUES OF FACT THAT REQUIRE A TRIAL .......... 3

II.    SUMMARY JUDGMENT IN FAVOR OF HSS IS WARRANTED ON ITS
FAITHLESS SERVANT COUNTERCLAIM ....................................................... 4

    A.    The Faithless Servant Doctrine ................................................................. 4

    B.    In Purposefully Reviewing, Taking, and Then Using the E-mails of Her
Supervisors and Confidential, Privileged Documents Belonging to HSS,
Hinds Acted as a Faithless Servant ........................................................... 5

III.   SUMMARY JUDGMENT IN FAVOR OF HSS IS ALSO WARRANTED ON
HINDS'S CLAIMS ............................................................................................... 8

    A.    Hinds Cannot Establish a Claim for Liquidated Damages Under Either
State or Federal Law .................................................................................. 8

        1.    Hinds waived any claim for liquidated damages under the
NYLL .............................................................................................. 8

        2.    Even if this Court were to find that Hinds has not waived her
NYLL liquidated damages claim, that claim, and her FLSA
liquidated damages claim, fail on the merits because she cannot
establish a lack of good faith (or willfulness) by HSS ................. 12

        3.    Even if this Court were to find that Hinds did not waive her
liquidated damages claim, or that her claims have merit, she would
not be entitled to a double recovery ............................................. 16

    B.    Hinds Cannot Establish a *Prima Facie* Case of Retaliation and Cannot
Rebut the Legitimate, Non-Retaliatory Reasons Articulated by HSS for
Taking the Actions About Which She Complains, or Prove Pretext ........ 16

        1.    Hinds cannot establish a *prima facie* case of retaliation ............... 18

            (a)    Hinds did not engage in FLSA-protected activity,
thereby requiring dismissal of her federal retaliation claim
under Count IV of the Amended Complaint, as a matter of
law .................................................................................. 18

(b)    With the exception of her termination, Hinds did not suffer an adverse employment action, thereby requiring dismissal of her state retaliation claim under Count III of the Amended Complaint as to all non-termination-related allegations ......................................................................... 19

(c)    Hinds cannot establish a causal connection between the only adverse employment action about which she complains (her February 2011 termination) and her October 2010 inquiry regarding the classification of her position, thereby requiring dismissal of her state retaliation claim under Count III of the Amended Complaint, in its entirety ............................................................................. 21

2.    Hinds cannot rebut the legitimate, non-retaliatory reasons articulated by HSS for eliminating her position, or show pretext ......................................................................................... 23

(a)    HSS's legitimate, non-retaliatory reasons.......................... 23

(b)    Hinds's inability to rebut HSS's legitimate, non-retaliatory reasons for her termination, or show pretext ................... 27

IV.    EVEN IF HINDS COULD SURVIVE SUMMARY JUDGMENT ON ANY OF HER CLAIMS, HSS IS ENTITLED TO A DECLARATORY JUDGMENT AS TO HER RECOVERY OF DAMAGES ............................................................. 29

CONCLUSION ...................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Azkour v. Little Rest Twelve, Inc.*,
    10 Civ. 4132, 2012 WL 402049 (S.D.N.Y. Feb. 7, 2012)...............................................12, 17

*Bigda v. Fischbach Corp.*,
    898 F. Supp. 1004 (S.D.N.Y. 1995)..........................................................................................7

*Boyd v. Presbyterian Hosp.*,
    160 F.Supp.2d 522 (S.D.N.Y.2001)........................................................................................20

*Calavano v. N.Y.C. Health & Hosps. Corp.*,
    246 A.D.2d 317 (1st Dep't 1998) ...............................................................................9, 10, 11

*Carpenter v. City of Torrington*,
    100 Fed. Appx. 858 (2d Cir. 2004)..........................................................................................20

*Castagna v. Luceno*,
    No. 09 Civ. 9332, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011)....................................19, 20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................................................................3

*Chan v. Sung Yue Tung Corp.*,
    03 Civ. 6048, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)........................................................16

*Christopher v. SmithKline Beecham Corp.*,
    132 S.Ct. 2156 (2012).........................................................................................................3, 15

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)..................................................................................................................22

*Colpean v. Ajilon, L.L.C.*,
    05 Civ. 73710, 2007 WL 1017340 (E.D. Mich. Mar. 30, 2007) ............................................29

*Danieu v. Teamsters Local 264*,
    08 Civ. 00500S, 2011 WL 1259839 (W.D.N.Y. Mar. 31, 2011)............................................20

*Dawson v. Cnty. of Westchester*,
    373 F.3d 265 (2d Cir. 2004)......................................................................................................4

*DiCola v. SwissRe Holding, Inc.*,
    996 F.2d 30 (2d Cir. 1993)......................................................................................................26

*Distasio v. Perkin Elmer Corp.*,
    157 F.3d 55 (2d Cir. 1998)........................................................................................................3

*Dister v. Continental Group, Inc.*,
   859 F.2d 1108 (2d Cir. 1988).........................................................................26, 28

*Dixon v. Int'l Federation of Accountants*,
   416 Fed. Appx. 107 (2d Cir. 2011).......................................................................22

*Donaldson v. Merrill Lynch & Co.*,
   794 F. Supp. 498 (S.D.N.Y. 1992) .......................................................................26

*Duarte v. Tri–State Physical Med. & Rehab., P.C.*,
   11 Civ. 3765, 2012 WL 2847741 (S.D.N.Y. July 11, 2012) ..................................18

*Dunn v. City Univ. of N.Y.*,
   11 Civ. 8210, 2012 WL 5511607 (S.D.N.Y. Nov. 14, 2012) ..................................18

*Ergo v. Int'l Merchant Services, Inc.*,
   519 F.Supp.2d 765 (N.D. Ill. 2007) .......................................................................21

*Feiger v. Iral Jewelry, Ltd.*,
   41 N.Y.2d 928 (1977) ..............................................................................................4

*Flick v. Am. Fin. Res.*,
   10 Civ. 3084, 2012 WL 5386157 (E.D.N.Y. Oct. 31, 2012) ..................................18

*Furnish v. Merlo*,
   93 Civ. 1052, 1994 WL 574137 (D. Or. Aug. 29, 1994)..................................7, 8, 9

*Graves v. Deutsche Bank Sec. Inc.*,
   No. 07 Civ. 5471, 2010 WL 997178 (S.D.N.Y. Mar. 18, 2010) ............................18

*Greathouse v. JHS Security, Inc.*,
   11 Civ. 7845, 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012) ..................................18

*Greene v. Coach, Inc.*,
   218 F. Supp. 2d 404 (S.D.N.Y. 2002).............................................................29, 30

*Herrera v. Clipper Grp., L.P.*,
   97 Civ. 560/97 Civ. 561, 1998 WL 229499 (S.D.N.Y. May 6, 1998)......................7

*Hill v. Rayboy-Brauestein*,
   467 F.Supp.2d 336 (S.D.N.Y. 2006).......................................................................20

*Howard v. Port Auth. of N.Y. & N.J.*,
   684 F. Supp. 2d 409 (S.D.N.Y. 2010).....................................................................12

*Hughes v. Derwinski*,
   967 F.2d 1168 (7th Cir. 1992) ................................................................................22

*Hummel v. AstraZeneca, LP,*
    575 F.Supp.2d 568 (S.D.N.Y. 2008)..............................................................10, 11

*Hyunmi Son v. Reina Bijoux, Inc.,*
    823 F.Supp.2d 238 (S.D.N.Y. 2011)....................................................................18

*Iron Mountain Info. Mgmt., Inc. v. Taddeo,*
    455 F.Supp. 2d 124 (E.D.N.Y. 2006) .....................................................................7

*Jimoh v. Ernst & Young,*
    908 F.Supp.220 (S.D.N.Y. 2005) ..................................................................27, 28

*Jin v. Pacific Buffet House, Inc.,*
    06 Civ. 579, 2009 WL 2601995 (E.D.N.Y. Aug. 24, 2009)...................................16

*Jowers v. Family Dollar Stores, Inc.,*
    09-2620, 2010 WL 3528978 (S.D.N.Y. Aug. 16, 2010)........................................28

*Kadden v. VisuaLex, LLC,*
    11 Civ. 4892, 2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012)...........................13, 15

*Kenneth D. Laub & Co. v. Bear Stearns Cos., Inc.,*
    718 N.Y.S.2d 45 (1st Dep't 2001) .....................................................................5, 6

*Kulak v. City of New York,*
    88 F.3d 63 (2d Cir. 1996).........................................................................4, 22, 27

*Lambert v. Genesee Hospital,*
    10 F.3d 46 (2d Cir. 1993)...............................................................................18, 19

*Lee v. Sony BMG Music Entm't,*
    07 Civ. 6733, 2010 WL 743948 (S.D.N.Y. March 3, 2010)..............................22, 27

*Mabry v. Neighborhood Defender Serv.,*
    769 F.Supp.2d 381 (S.D.N.Y. 2011)....................................................................20

*Marin v. JMP Restoration Corp.,*
    09 Civ. 1384, 2012 WL 4369748 (E.D.N.Y. Aug. 24, 2012)...............................16

*Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc.,*
    100 A.D.2d 81 (1st Dep't 1984) ........................................................................4, 5

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)............................................................................................17

*McKennon v. Nashville Banner Publishing Co.,*
    513 U.S. 352 (1995)......................................................................................29, 30

*Mullins v. City of New York,*
    626 F.3d 47 (2d Cir. 2010)..................................................................17, 27

*Murray v. Visiting Nurse Servs. of N.Y.,*
    528 F. Supp.2d 257 (S.D.N.Y. 2007)..................................................28

*O'Day v. McDonnell Douglas Helicopter Co.,*
    79 F.3d 756 (9th Cir. 1996) ...............................................................29

*Orr v. James D. Julia, Inc.*
    07 Civ. 51-B-W, 2008 WL 2605569 (D. Me. 2008)........................20, 21

*Pampillonia v. RJR Nabisco, Inc.,*
    138 F.3d 459 (2d Cir. 1998)................................................................9

*Perry v. NYSARC, Inc.,*
    424 Fed. Appx. 23 (2d Cir. May 27, 2011)......................................21, 22

*Phansalker v. Andersen Weinroth & Co., L.P.,*
    344 F.3d 184 (2d Cir. 2003)................................................................4

*Reich v. S. New England Telecomm. Corp.,*
    121 F.3d 58 (2d Cir. 1997)................................................................12

*Risco v. McHugh,*
    868 F. Supp. 2d 75 (S.D.N.Y. 2012).................................................28

*Scaria v. Rubin,*
    117 F.3d 652 (2d Cir. 1997)..............................................................28

*Schanfield v. Sojitz Corp. of Am.,*
    663 F.Supp.2d 305 (S.D.N.Y. 2009)................................................4, 7

*Shaw v. Baldowski,*
    192 Misc.2d 635, 747 N.Y.S.2d 136 (Sup.Ct. Albany Cnty. 2002) ......19

*Shumway v. United Parcel Serv., Inc.,*
    118 F.3d 60 (2d Cir. 1997)................................................................21

*Simel v. JP Morgan Chase,*
    05 Civ. 9750, 2007 WL 809689 (S.D.N.Y. Mar. 19, 2007) ..................10

*Skluth v. United Merchants & Mfrs., Inc.,*
    163 A.D.2d 104 (1st Dep't 1990) ......................................................11

*Sookdeo-Ruiz v. GCI Group,*
    00 Civ. 3517, 2001 WL 121942 (S.D.N.Y. Feb. 13, 2001).....................4

*Steffes v. Stepan Co.*,
   144 F.3d 1070 (7th Cir.1998) ................................................................20

*Viola v. Philips Medical Sys. of North Am.*,
   42 F.3d 712, 717-18 (2d Cir. 1994) .....................................................26

*Vosatka v. Columbia Univ.*,
   04 Civ. 2936, 2005 WL 2044857 (S.D.N.Y. Aug.25, 2005) ..................28

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000)....................................................................17

*Western Elec. Co. v. Brenner*,
   41 N.Y.2d 291 (1977) .............................................................................4

*Wright v. Brae Burn Country Club*,
   08 Civ. 3172, 2009 WL 725012 (S.D.N.Y. Mar. 20, 2009) ..................10

*Yin v. Kim*,
   07 Civ. 1236, 2008 WL 906736 (E.D.N.Y. Apr. 1, 2008).....................16

### STATUTES

29 C.F.R. § 541.200...........................................................................14, 15

29 C.F.R. § 541.203.................................................................................15

29 C.F.R. § 541.600.................................................................................15

N.Y. LAB. LAW § 198(1-a) (eff. Nov. 16, 1997, through Nov. 23, 2009) ...12

N.Y. LAB. LAW §198(1-a) (eff. Nov. 24, 2009, through Apr. 8, 2011) .........12

N.Y. LAB. LAW § 215(1)(a) (eff. Nov. 24, 2009, through Apr. 9, 2011).......17

### OTHER AUTHORIES

Fed. R. Civ. P. 56(a) .................................................................................3

**TABLE OF SUPPORTING PAPERS**

1.  Defendant's Notice of Motion for Summary Judgment;

2.  Memorandum of Law in Support of Defendant's Motion for Summary Judgment

3.  Defendant's 56.1 Statement of Undisputed Material Facts;

4.  Affirmation of Amy J. Traub, Esq. in Support of Defendant's Motion for Summary Judgment, attaching the following exhibits:

> **Exhibit A**:  The Complaint, filed on May 9, 2011;

> **Exhibit B**:  Defendant's Answer and Counterclaims, filed on July 25, 2011;

> **Exhibit C**:  Plaintiff's Reply to Counterclaims, filed on August 15, 2011;

> **Exhibit D**:  Letter dated October 20, 2011, from Amy J. Traub, Esq. to Paul P. Rooney, Esq., enclosing this privilege log;

> **Exhibit E**:  Plaintiff's Amended Complaint, filed on March 9, 2012;

> **Exhibit F**:  August 10, 2012 Court Order;

> **Exhibit G**:  Redacted version of the Amended Complaint, reflecting the fact that Paragraphs 19, 21, 27, and 47 were stricken per the Court's August 10, 2012 Order;

> **Exhibit H**:  Excerpts of the transcript of Plaintiff Melani A.M. Hinds's ("Hinds") Hinds's deposition, which was taken on July 12, 2012;

> **Exhibit I**:  Excerpts of the transcript of Randi Karp's deposition, which was taken on October 23, 2012;

> **Exhibit J**:  Excerpts of the transcript of Mary K. Crow, M.D.'s deposition, which was taken on October 26, 2012;

> **Exhibit K**:  Excerpts of the transcript of Laughlin Rice's deposition, which was taken on November 6, 2012;

> **Exhibit L**:  Excerpts of the transcript of Bruce Slawitsky's deposition, which was taken on November 7, 2012;

> **Exhibit M**:  Excerpts of the transcript of Thomas Clark's deposition, which was taken on November 15, 2012;

**Exhibit  N**:  March 19, 2010 e-mail from HSS to Hinds, bates-stamped P000001 to 000002 and which was marked as Exhibit 2 at Hinds's deposition;

**Exhibit O**:   Hinds's  resume,  bates-stamped  HSS 0006-0007 and which was marked as Exhibit 3 at Hinds's deposition;

**Exhibit P**:   April 2, 2010 letter from Hinds to Yolanda Abreu, bates-stamped HSS 0008 and which was marked as Exhibit 4 at Hinds's deposition;

**Exhibit Q**:   April 30, 2010 letter from Yolanda Abreu to Hinds, bates-stamped HSS 0013 and which was marked as Exhibit 5 at Hinds's deposition;

**Exhibit R**:   October 21, 2010 e-mail from Hinds to Yolanda Abreu, bates-stamped P000135 and which was marked as Exhibit 12 at Hinds's deposition;

**Exhibit S**:  October 21, 2010 e-mail from Hinds to Rice, bates-stamped P 137 and which was marked as Exhibit 14 at Hinds's deposition;

**Exhibit T**:   Document entitled "HSS 6 Month Employee Review Narrative," bates-stamped HSS 058-60 and which was marked as Exhibit 16 at Hinds's deposition;

**Exhibit U**:  The clarified job description for the position of Executive Assistant for the Office of the Physician-in-Chief, which was presented to Hinds on December 1, 2010, bates-stamped P000022 to P000024 and which was marked as Exhibit 17 at Hinds's deposition;

**Exhibit V**: Hinds's response to the clarified job description for the position of Executive Assistant for the Office of the Physician-in-Chief, bates-stamped P000016 to P000021 and which was marked as Exhibit 18 at Hinds's deposition;

**Exhibit W**:   December 30, 2010 memorandum from Hinds to Bruce Slawitsky, bates-stamped HSS 64 to 75 and which was marked as Exhibit 19 at Hinds's deposition;

**Exhibit X**:   January 10, 2011 e-mail from Hinds to Bruce Slawitsky, bates-stamped HSS 0178 to HSS 0179 and which was marked as Exhibit 22 at Hinds's deposition;

**Exhibit Y**:  Check dated January 10, 2011, in the net amount of $13,817.45 and check dated January 10, 2011 in the net amount of $310.42, both of which were paid to the order of Hinds, bates-stamped HSS 00995 to 00996 and which was marked as Exhibit 23 at Hinds's deposition;

**Exhibit Z**:  Agreement and Acknowledgment of Payment, signed by Hinds on January 12, 2011, bates-stamped P000042 and which was marked as Exhibit 24 at Hinds's deposition;

**Exhibit AA**:  October 21, 2010 e-mail correspondence between Randi Karp, Laughlin Rice, and Thomas Clark, bates-stamped HSS 0151 to 0153 and which was marked as Exhibit 7 to Karp's deposition; and

**Exhibit BB**:  The original job description for the Executive Assistant position, bates-stamped HSS 0061 to 0063 and which was marked as Exhibit 2 to Clark's deposition.

5.     Declaration of Bruce Slawitsky in Support of Defendant's Motion for Summary Judgment, attaching the following exhibits:

**Exhibit CC**:  HSS's Code of Conduct, dated January 2007;

**Exhibit DD:**  "Corporate Compliance Statement of Commitment" signed and acknowledged by Plaintiff Melanie A.M. Hinds on June 7, 2010;

**Exhibit EE**:  March 30, 2010 e-mail from Yolanda Abreu, Professional Recruiter, dated March 30, 2010, to Nereida Baez, inviting Ms. Baez to interview for an Office Manager position at HSS;

**Exhibit FF**:    April 19, 2010 letter from Joanne Parnofiello, Director of Recruitment, dated April 19, 2010, to Ms. Baez, confirming HSS's offer and Ms. Baez's acceptance of the position of Office Manager;

**Exhibit GG**:  The job description for the Office Manager for the Physician-in-Chief; and

**Exhibit HH**:  "Rules of Conduct" contained in HSS's Human Resources Policies and Procedures, dated August 2009.

6.     Declaration of Thomas Clark in Support of Defendant's Motion for Summary Judgment;

7.     Declaration of Mary Kuntz Crow, M.D. in Support of Defendant's Motion for Summary Judgment; and

8.     Declaration of Laughlin Rice in Support of Defendant's Motion for Summary Judgment.

## PRELIMINARY STATEMENT

This is the classic case of the old adage, "No good deed goes unpunished."  The undisputed facts establish that Defendant Hospital for Special Surgery ("HSS") went out of its way to follow its policies, comport with the law, and work with Plaintiff Melanie A.M. Hinds ("Hinds") during her employment.  Hinds was hired to work as the Executive Assistant to Mary Kuntz Crow, M.D., the Physician-in-Chief for the Department of Medicine, a new position that HSS had, after months of thoroughly analyzing the duties and responsibilities for the anticipated role, determined, in good faith, to be exempt under wage-and-hour laws.  Six months into her employment, Hinds "raised a question" about the classification of her position.  And this is where the old adage begins to play out.

HSS immediately began treating Hinds as nonexempt pending an investigation of her inquiry, so that it would have a mechanism by which to calculate overtime should it determine she was owed it—Hinds now complains that the investigation took too long.  HSS gave Hinds the opportunity to review a clarified job description for her role and identify the duties she had been performing, for the dual purpose of determining whether she had been performing as more of a nonexempt employee her first six months, and clarifying for her (giving her the benefit of the doubt that perhaps she had not previously understood) the required expectations for her role—Hinds now argues this was indicative of some kind of a "conspiracy" to avoid paying her overtime.

At the conclusion of the investigation, HSS agreed with Hinds that the duties she performed in her first six months were primarily nonexempt, so they paid her all of the overtime she claimed to have worked plus interest—Hinds now claims that HSS should also pay her liquidated damages, despite having signed a release waiving those claims.  HSS then changed Hinds's classification on a going-forward basis to nonexempt—Hinds now complains about not

having the same freedoms that she had when she was an exempt employee and contends (without evidence) that this was somehow retaliatory.  Despite the fact that Dr. Crow's departmental needs for the Executive Assistant role required a higher level of independence and purpose, Dr. Crow decided to "give it a shot" and continue employing Hinds in the role in the hopes that she would begin performing the higher-level functions set forth on her job description and meeting the needs of the department.  When Hinds failed to step up to the plate and Dr. Crow confirmed that her departmental needs required more out of this role, Dr. Crow eliminated Hinds's position—Hinds now contends (without evidence) that this must have been in retaliation for having raised a question about her classification.

From Hinds's perspective, HSS was never going to get it right, no matter what it did. Hinds decided as early as the very day she first inquired about her classification that she would not even give HSS a chance, and she immediately began abusing the delegate rights she claims to have been granted to her supervisors' Microsoft Outlook accounts that same morning. Specifically, that day and continuing thereafter for four months, Hinds admits that she accessed, reviewed, printed, and retained e-mails pertaining to herself, her inquiry about her classification, the needs of Dr. Crow's department, the clarification of Hinds's job description, and the eventual elimination of her position, including attorney-client privileged e-mails and work product, and then took them home with her for use in this litigation, eventually quoting from them in her Complaint.

In her lawsuit, Hinds brings claims against HSS for liquidated damages and retaliation, but none of her claims can survive summary judgment.  As an initial matter, Hinds was indisputably a faithless servant beginning October 21, 2010, and must be held accountable for her egregious misconduct; accordingly, summary judgment is warranted on HSS's Faithless

Servant Counterclaim.  Hinds's state liquidated damages claim must be dismissed because Hinds waived that claim when she signed an agreement following the payment of overtime to her. Hinds's federal liquidated damages claim also fails because she cannot establish a lack of good faith by HSS, and in fact, the Supreme Court recently opined that individuals, like Hinds, earning "more than $70,000 per year . . . are hardly the kind of employees that the FLSA was intended to protect."  *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2173 (2012).  Finally, summary judgment is required on Hinds's retaliation claims because she cannot establish a *prima facie* case and cannot rebut the legitimate, non-retaliatory reasons for the adverse employment actions about which she complains, or prove pretext.

Accordingly, HSS respectfully requests that its motion for summary judgment be granted.

## STATEMENT OF FACTS

HSS refers the Court to its Rule 56.1 Statement of Undisputed Material Facts ("56.1 Stmt.") for a full recitation of facts.

## LEGAL ARGUMENT

### I.    SUMMARY JUDGMENT MUST BE GRANTED WHERE, AS HERE, THERE EXIST NO MATERIAL ISSUES OF FACT THAT REQUIRE A TRIAL

Summary judgment is warranted where, as here, the pleadings, the discovery and disclosure materials, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998).  Thus, though this Court must accept as true the factual allegations of the party defending against a summary

judgment motion, *see Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996), to survive a motion for summary judgment, an opposing party cannot simply rely on conjecture and speculation. *See Dawson v. Cnty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004). Instead, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts," and must enumerate "specific facts and circumstances supported by deposition, affidavits based on personal knowledge, and admissions." *Sookdeo-Ruiz v. GCI Group*, 00 Civ. 3517, 2001 WL 121942, at *2 (S.D.N.Y. Feb. 13, 2001). Additionally, the party "cannot rely on conclusory allegations or denials." *Id.* For the reasons set forth herein, Hinds cannot survive HSS's motion for summary judgment.

## II.   SUMMARY JUDGMENT IN FAVOR OF HSS IS WARRANTED ON ITS FAITHLESS SERVANT COUNTERCLAIM

### A.   The Faithless Servant Doctrine

Under New York's Faithless Servant Doctrine, an employee is obligated "'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Phansalker v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (*quoting Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977)). "This prohibition extends to the exploitation of an employer's confidential information for the employee's . . . benefit." *Schanfield v. Sojitz Corp. of Am.*, 663 F.Supp.2d 305, 349 (S.D.N.Y. 2009).

"'One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.'" *Phansalker*, 344 F.3d at 200 (quoting *Feiger v. Iral Jewelry, Ltd*., 41 N.Y.2d 928, 928 (1977)). Moreover, an employer is entitled to recover from his unfaithful employee any compensation paid during the period of the employee's disloyalty. *See id.*; *see also Maritime*

4

*Fish Prods., Inc. v. World-Wide Fish Prods., Inc.*, 100 A.D.2d 81, 91 (1st Dep't 1984) (employee must return compensation paid to employee during period of disloyalty); *Kenneth D. Laub & Co. v. Bear Stearns Cos., Inc.*, 718 N.Y.S.2d 45, 45 (1st Dep't 2001) (compensation paid to agent during period of disloyalty is subject to forfeiture).

> **B.**     **In Purposefully Reviewing, Taking, and Then Using the E-mails of Her Supervisors and Confidential, Privileged Documents Belonging to HSS, Hinds Acted as a Faithless Servant**

The facts on HSS's Faithless Servant Counterclaim are not in dispute. Hinds admits owing a duty of good faith and a duty of loyalty to HSS, and admits that she was "bound to exercise the utmost good faith and loyalty in the performance of her duties." (56.1 Stmt. ¶ 30-31.) She further admits that, in connection with the performance of her duties, she had access to the use of a computer and computer information provided to her by HSS "for work-related purposes" (*Id.* ¶ 32), and that HSS's e-mail system was considered the property of HSS (*Id.* ¶ 33).

According to Hinds, Dr. Crow and Rice gave her "delegate" rights to their Microsoft Outlook accounts. (*Id.* ¶¶ 71-72.) Hinds understood her access to Dr. Crow's account to extend only to "business related function[s]," such as when Dr. Crow was away from her desk at meetings or traveling, "to see if someone wanted to set up a meeting [or] if anyone had requests." (*Id.* ¶¶ 73.) Hinds knew whether an e-mail of Dr. Crow's was "business related" (and therefore, appropriate for her review) by reading the authors of the e-mail and the subject lines. (*Id.*) Hinds admits it was not part of her job responsibilities "during the day most of the time" to access that e-mails of Laughlin Rice ("Rice"), the Administrative Director for the Department of Medicine, because she was not his Executive Assistant. (*Id.* ¶ 74.) Notwithstanding the foregoing, Hinds admits that, on multiple occasions, she abused the authority and trust she claims was granted to her by purposefully accessing, reviewing, taking, retaining, and then using

copies of e-mails and documents from Dr. Crow's and Rice's e-mail accounts for the admitted, unauthorized purpose of assisting herself in this lawsuit. (*Id.* ¶¶ 75-81.)

Hinds supplied HSS with the first evidence of her breaches when she used, and quoted from, the documents she reviewed and stole from HSS in her Complaint, including e-mails that were attorney-client privileged and/or work product. (Compl. ¶¶ 19, 21, 27.) Her egregious conduct became even clearer when she testified in her deposition that on October 21, 2010, she saw an e-mail in Dr. Crow's inbox between her supervisors "regarding [herself]" and the inquiry she had made to the Human Resources Department that same day about the classification of her position. (56.1 Stmt. ¶ 75.) She admitted, and the documents exchanged in discovery further revealed, that beginning that day and continuing for months thereafter, Hinds engaged in the repeated conduct of reviewing and printing dozens of Dr. Crow's and Rice's e-mails, including attorney-client privileged communications, legal advice, and other work product specifically related to Hinds's classification, her entitlement to overtime, the clarification of her job description, and the eventual elimination of her position—not for any business reason associated with her actual duties and responsibilities, but for her own personal gain and use.[1] (*Id.* ¶ 76-78.)

Hinds admits that, in addition to Dr. Crow's e-mails, she also reviewed Rice's e-mails "three [or] four times" during her employment—not for any business reason for which she claims to have been given access to his account, but solely because she was suspicious about the investigation of her inquiry" (*Id.* ¶ 79.) According to Hinds, "they were giving [her] every

---

[1] Among the communications and work product that Hinds reviewed and printed were scripts drafted by in-house or outside counsel to be used in meetings with Hinds. (56.1 Stmt. ¶ 77.) Hinds saw these scripts well in advance of the meetings she thereafter attended (somehow with a straight face). (*Id.* ¶ 77.) She further saw communications from counsel containing advice as to how to respond to certain actions or statements that might be made by Hinds following each meeting, as well as discussions about the options, legal implications, and/or risks of taking certain steps with respect to Hinds. (*Id.* ¶ 78.)

reason to believe that they were not going to act honorably,"[2] so she took matters into her own hands and began sifting through her supervisors' e-mails, looking for any communications related to herself.  (*Id.* ¶ 79-80.)  She printed e-mails that "referred to [her]," removed them from the premises of HSS, and then used them to form the basis of her allegations and litigation strategy against HSS.  (Compl. ¶¶ 19, 21, 27; Am. Comp. ¶¶ 19, 21, 27, and 46.)

Hinds's conduct, which began immediately upon making an inquiry to the Human Resources Department, and which continued for four months thereafter, is precisely the kind of disloyal activity that this and other courts have found to be indicative of faithless service.  *See, e.g., Herrera v. Clipper Grp., L.P.*, 97 Civ. 560/97 Civ. 561, 1998 WL 229499, at *1-2 (S.D.N.Y. May 6, 1998) (where plaintiff had copied and removed privileged and confidential documents from office files to which she had access, court concluded that she had acted in bad faith and breached duty of loyalty to her employer); *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1017 (S.D.N.Y. 1995) ("Company documents are company property and if [a plaintiff] . . . take[s] them to benefit himself he would . . . breach[] his duty of loyalty."); *Schanfield,* 663 F. Supp. 2d at 349 ("the exploitation of an employer's confidential information for the employee's . . . benefit" constitutes a breach of duty of loyalty); *Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F.Supp. 2d 124, 140 (E.D.N.Y. 2006) (likelihood of success on breach of duty of loyalty claim if physical taking of confidential information); *Furnish v. Merlo*, 93 Civ. 1052, 1994 WL 574137, at *6 (D. Or. Aug. 29, 1994) ("[s]imply because [plaintiff, an executive assistant] had a key, did not take originals, found one document in her personnel file, and had work-related

---

[2] As set forth in more detail in the 56.1 Statement, it is undisputed that HSS immediately began treating Hinds as nonexempt as of the date of her inquiry, an investigation was conducted, she was paid all of the overtime she claimed to have worked plus interest, HSS ultimately reclassified her, and it continued employing her after her inquiry.  (56.1 Stmt. ¶¶ 45-46, 55-56, 61-62.)  This is hardly evidence of not "act[ing] honorably."

access to the documents does not mean that she was authorized to copy the documents, remove them from [defendant's] office, and give them to her attorneys").

The undisputed evidence demonstrates that Hinds was a faithless servant.  Accordingly, and pursuant to well-settled precedent, the Court should grant HSS summary judgment on its Faithless Servant Counterclaim and order that Hinds repay the compensation paid to her from October 21, 2010 (her admitted first date of disloyalty) through February 17, 2011 (the date HSS eliminated her position).

## III.   SUMMARY JUDGMENT IN FAVOR OF HSS IS ALSO WARRANTED ON HINDS'S CLAIMS

### A.   Hinds Cannot Establish a Claim for Liquidated Damages Under Either State or Federal Law

#### 1.   Hinds waived any claim for liquidated damages under the NYLL

On or about January 3, 2011, Hinds provided HSS with her final estimate of all of the hours she claimed to have worked from May 10, 2010, through January 2, 2011.[3]  (56.1 Stmt. ¶ 14.)  HSS accepted Hinds's statement of hours worked and, on January 10, 2011, presented her with a check in the net amount of $13,817.45 (gross of $23,868.36) and a separate check in the net amount of $310.42 (gross of $334.70) for interest, for a total net payment of $14,127.87 (gross of $24,203.06).   (*Id.* ¶ 61.)   Hinds also was presented with an Agreement and Acknowledgment of Payment (the "Agreement"), which she took home with her to review before signing.  (*Id.* ¶ 62.)  Two days later, Hinds returned a signed copy of the Agreement to HSS.  (*Id.* ¶ 63.)

---

[3] As set forth in more detail in the 56.1 Statement, Hinds previously had provided an estimate of hours allegedly worked to HSS on December 7, 2010, but that estimate did not include missed lunches.  (56.1 Stmt. ¶ 59.)  Notably, it was **HSS** (and, specifically, Bruce Slawitsky ("Slawitsky"), Vice President of Human Resources and Service Excellence, whom Hinds accuses of being a wrongdoer in this lawsuit), that advised Hinds of her oversight and asked that she provide an updated estimate that included these additional hours worked, so that she could be paid for them.  (*Id.*)

In the Agreement, Hinds clearly and unmistakably released her liquidated damages claim under the NYLL.  Specifically, she stated as follows:

> I acknowledge that I have received a payment of $13,817.45 (net after applicable taxes on the gross sum of $23,868.36) for overtime and a payment of $310.42 (net after applicable taxes on the gross sum of $334.70) for interest on the amount owed calculated at 7.5%.  I agree that this payment represents the full amount of any and all monies due and owing to me by the Hospital for the period May 10, 2010 to December 25, 2010.

(*Id*. ¶ 63, Ex. Z (¶ 1).)  Hinds also acknowledged and agreed that, having had the opportunity to discuss the issues with HSS, "the payment provided to [her] pursuant to th[e] Agreement [wa]s the sum agreed upon by [her] and the Hospital."  (*Id*. ¶ 63, Ex. Z (¶ 3).)  She further stated:

> I agree that by signing this Agreement, I am acknowledging and agreeing that the Hospital does not owe me any additional money, wages, salary, overtime compensation, bonuses, or any other compensation related to my employment up to the date of the execution of this Agreement.

(*Id*. ¶ 63, Ex. Z (¶ 4).)  Hinds also agreed that if she commenced any action for the payment of wages, including overtime, covered by the Agreement, the "Agreement may be used by the Hospital as evidence that [she has] been paid for all monies due and owing up to the date of the execution of this Agreement."  (*Id*. ¶ 63, Ex. Z (¶ 6).)  Finally, Hinds agreed to "release [HSS] from any and all liability for past monies due and owing to [her] in connection with [her] employment at" HSS, and acknowledged that she "sign[ed] [the] Agreement and Acknowledgment of Payment . . . voluntarily and of [her] own free will."  (*Id*. ¶ 63, Ex. Z (¶ 8).)

Under New York law, a release, such as the Agreement, that is "clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced."  *Pampillonia v. RJR Nabisco, Inc*., 138 F.3d 459, 463 (2d Cir. 1998).  A release shall not be "treated lightly" and will be vacated only for "duress, illegality, fraud or mutual mistake."  *Calavano v. N.Y.C. Health & Hosps. Corp.*, 246 A.D.2d 317, 319 (1st Dep't 1998).  In fact, "[a]s compromises of

disputed liability, releases are not only valid but favored as a matter of public policy." *Simel v. JP Morgan Chase*, 05 Civ. 9750, 2007 WL 809689, at *3 (S.D.N.Y. Mar. 19, 2007); *Calavano*, 246 A.D.2d at 318 ("[s]trong policy considerations favor the enforcement of settlement agreements."). "The burden falls on the releasor who tries to retract a release to demonstrate both that the injury was unknown at the time of the release and that the release was limited rather than general, in order to establish that the parties had not intended the literal effect of the release." *Id.* at 319. Hinds cannot carry this burden.

As an initial matter, the NYLL contains no express provisions precluding or restricting private settlements as to wage-related claims, and, as one court stated, there is "no overriding public policy that should displace the basic contractual principle that a plaintiff should be estopped from maintaining an action where the stated claims which are the subject of the action were validly compromised and settled." *Simel*, 2007 WL 809689 at *5-6. Indeed, courts routinely enforce private releases of NYLL claims based on the "public policy in favor of honoring validly entered settlements." *Id.* at *5 (enforcing release as to state overtime compensation claim that specifically covered "claims for wages, hours and conditions of employment"); *Hummel v. AstraZeneca, LP*, 575 F.Supp.2d 568, 570-71 (S.D.N.Y. 2008) (enforcing private release of NYLL claims); *Wright v. Brae Burn Country Club*, 08 Civ. 3172, 2009 WL 725012 (S.D.N.Y. Mar. 20, 2009) (same).

Additionally, the Agreement was entered into as a result of Hinds's October 12, 2010 inquiry about the classification of her position. Indeed, Hinds stated that she had conducted her own "[r]esearch . . . on the internet about the exempt versus nonexempt employee classification," including research "through the Department of Labor" and other "government sites," which, she claims, led her to believe that HSS had "willfully" (a standard for liquidated damages) withheld

overtime from her.  (Hinds Dep. at 8-10.)  Hinds also testified that based on her "understanding" of what she "read on the internet" at the time she raised the question of her classification, that she believes that she is entitled to liquidated damages because of HSS's "willful withholding" of overtime.  (Hinds Dep. at 8-9, 360.)  In addition, well before she signed the Agreement, Hinds had printed out a copy of the "regulations" under the wage-and-hour laws relating to the classification of employees and gave a copy to Dr. Crow.  (56.1 Stmt. ¶ 41.)  Hinds's alleged "injury" was, therefore, clearly known at the time of her release, rendering her unable to carry her first burden.  *See Calavano*, 246 A.D.2d at 319.

Finally, Hinds is a highly-educated professional with a Master's degree from New York University and a Bachelor's of Science degree from the Stern School of Business.  (56.1 Stmt. ¶ 29.)  She performed her own extensive research on the classification issue and, based on that research, believed that HSS had "willfully" (one of the standards for liquidated damages) withheld overtime from her.  (Hinds Dep. at 8-10, 360.)  Thus, her release of claims cannot be considered to have been limited rather than general.  Indeed, the Agreement is clear as to its coverage, releasing HSS from "any and all liability for past monies due and owing to [Hinds] in connection with [her] employment with the Hospital," and Hinds specifically acknowledged that HSS does not owe her any "additional money, wages, salary, overtime compensation, bonuses, or any other compensation."[4]   (Traub Aff. Ex. Z.)   Moreover, Hinds's execution of the Agreement was "voluntary and of [her] own free will," and, in fact, she took it home with her for a few days before signing and returning it to HSS, so she also cannot claim duress, illegality, fraud, or mutual mistake in entering into the Agreement.  (56.1 Stmt. ¶¶ 62-63.).  Accordingly, Hinds cannot meet her second burden.

---

[4] Additionally, it is well-settled that a release does not have to expressly mention a specific statute or specific remedy within the statute for a waiver of such a claim or remedy to be valid and binding.  *See Skluth v. United Merchants & Mfrs., Inc*., 163 A.D.2d 104, 107 (1st Dep't 1990); *Hummel,* 575 F. Supp.2d at 569-70.

11

Because Hinds clearly waived any claim for liquidated damages under the NYLL when she signed and returned the Agreement, HSS is entitled to summary judgment on Count II of the Amended Complaint.

> **2.** **Even if this Court were to find that Hinds has not waived her NYLL liquidated damages claim, that claim, and her FLSA liquidated damages claim, fail on the merits because she cannot establish a lack of good faith (or willfulness) by HSS**

The FLSA provides an affirmative defense to liquidated damages where an employer's act or omission giving rise to the action was in "good faith" and the employer had reasonable grounds for believing that its act or omission was not a violation of the FLSA. 29 U.S.C. § 260. Similarly, an employee is not entitled to recover liquidated damages under the NYLL from an employer that had a "good faith basis to believe that its underpayment of wages was in compliance with the law[.]"[5] N.Y. LAB. LAW §198(1-a) (eff. Nov. 24, 2009, through Apr. 9, 2011). "Acting in good faith requires that an employer 'first take active steps to ascertain the dictates of the FLSA and then move to comply with them.'" *Howard v. Port Auth. of N.Y. & N.J.*, 684 F. Supp. 2d 409, 416 (S.D.N.Y. 2010) (quoting *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Where, as here, an employer takes steps to ascertain whether a particular employee is exempt from overtime requirements, and holds a genuine belief as to what the primary duties of that employee are, *even if that employee does not ultimately perform those duties*, the misclassification of the employee is in good faith, and no liquidated

---

[5] Amendments to the NYLL in 2009 added the "good faith basis" language and removed prior language stating that employees must prove that an employer's violation is "willful" in order to recover liquidated damages. *Cf.* N.Y. LAB. LAW §198(1-a) (eff. Nov. 24, 2009, through Apr. 8, 2011) and N.Y. LAB. LAW § 198(1-a) (eff. Nov. 16, 1997, through Nov. 23, 2009). Some courts, however, still use the willfulness standard, even post-amendments. *See, e.g., Azkour v. Little Rest Twelve, Inc.*, 10 Civ. 4132, 2012 WL 402049, at *4 (S.D.N.Y. Feb. 7, 2012). "To establish willfulness, the court must find that the employer 'knowingly, deliberately, or voluntarily disregarded its obligations to pay wages.'" *Id.* at *8. Irrespective of which standard is applied by this Court, the conclusion is the same—Hinds is not entitled to recover liquidated damages.

damages should be awarded. *See Kadden v. VisuaLex, LLC*, 11 Civ. 4892, 2012 WL 4354781, at *12 (S.D.N.Y. Sept. 24, 2012).

It is undisputed that HSS acted in good faith when it initially classified the Executive Assistant position—a new role at HSS—as exempt. Thomas Clark ("Clark"), Director of Human Resources, was responsible for classifying employees at the time.[6] (56.1 Stmt. ¶¶ 12, 14.) As set forth in more detail in the 56.1 Statement, he had detailed discussions with the Department of Medicine and Rheumatology, including 2 to 8 meetings with Rice, to ascertain the specific functions and responsibilities anticipated for the role Hinds ultimately filled. (*Id.* ¶ 15.) Rice provided Clark with specific input from Dr. Crow regarding the needs of the department, as she saw them, and the purpose of the position (*Id.* ¶ 15), and further provided various drafts of the proposed job description for the position, which was an "evolving document" and which went through several revisions as Dr. Crow and Rice discussed the anticipated role for the position (*Id.*) It soon became clear through these continued discussions that the "scope of the role changed from more of a clerical administrative position[7] to . . . a role that had more responsibility within the [D]epartment of [M]edicine." (*Id.* ¶ 16.)

For example, "Dr. Crow and [Rice] added responsibilities regarding strategic planning [and] responsibilities relating to clinical research." (*Id.*) Additionally, it appeared that the "role was going to be an integral part of helping Dr. Crow move the department into the direction that she desired." (*Id.*) Indeed, as Dr. Crow settled into her new role as Physician-in-Chief and

---

[6] Clark has been employed by HSS since 1998 and has over 10 years of experience classifying employees under wage-and-hour laws. (56.1 Stmt. n. 2.) He stays abreast of developments in the law through "on the job training" on classifying employees, attending various conferences regarding "properly classifying employees as exempt versus non-exempt," and regularly reviewing the Department of Labor website. (*Id.*)

[7] When the position was first discussed with him in February 2010, Clark originally had given it an "Executive Secretary" title and classified it as nonexempt, based on the duties described to him at that time. Additional discussions in the months between February and May (before Hinds started working), however, revealed that the position was to be much more than an "Executive Secretary" role. (56.1 Stmt. ¶¶ 14-20)

began to better understand her needs and the needs of the department, her vision for the position evolved.  (*Id.* ¶ 17.)  She ultimately determined that she needed someone who could take an "independent and creative role to work closely with [her] . . . as well as other members of [the] division" to address "the strategic plan that [she] had developed"[8] and her "goals and aspirations for developing a very productive [D]epartment of [M]edicine," and who had the ability to "manag[e] others associated with [her] office to achieve a very well-functioning department" and "independently work on projects."  (*Id.*)

As a result of these more detailed discussions, Clark changed the position title from "Executive Secretary" to "Executive Assistant."  (*Id.* ¶ 19.)  He also changed the classification of the position from nonexempt to exempt.  (*Id.*)  Specifically, Clark classified the Executive Assistant position as exempt pursuant to the Administrative Exemption under federal and state wage-and-hour laws.  (*Id.* ¶ 20.)  In reclassifying the role, Clark concluded that, among other things, the anticipated responsibilities of working with Dr. Crow and Rice to "develop a strategic plan and business plan for [the] department" were exempt functions because they would "require the analysis of current strengths and weaknesses of clinical and academic activities and department structure" and would involve "decisions related to matters of significance pertaining to the [D]epartment of [M]edicine."  (*Id.*)

Indeed, Dr. Crow intended that the primary duty of the Executive Assistant position be the "performance of office or non-manual work directly related" to implementing and effectuating her own "strategic plan" for the Department of Medicine (*Id.* ¶¶ 17-18), which constitutes the "general business operations" of the department, 29 C.F.R. § 541.200(a)(2).  Dr. Crow further intended that the Executive Assistant exercise discretion and independent judgment

---

[8] After Dr. Crow became the Physician-in-Chief, with the help of Rice, she initiated a "strategic plan" which started the "process of looking at the whole operation and reorganizing" the department to "foster the mission of the department, which is patient care, education and research."  (56.1 Stmt. ¶ 17.)

with respect to various special projects that related to the overall strategic plan, which included: (1) analyzing and working on practice volume of the rheumatology practice; (2) implementing a plan for the perioperative medicine division; (3) working on optimizing flow of patients and utilizing exam rooms; and (4) "analy[zing] . . . current strengths and weaknesses" of clinical activities, department activities, and department structure.   (56.1 Stmt. ¶ 8.)   All of these job responsibilities are "matters of significance" to the Department of Medicine.   29 C.F.R. § 541.200(a)(3).   Furthermore, the FLSA regulations provide that an "executive assistant . . . to a senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance."   29 C.F.R. § 541.203.   Finally, Hinds earned a starting salary of $80,000 (and an ending salary of $82,500), and therefore, satisfied the salary basis test.[9]   29 C.F.R. § 541.600.

Thus, there is no evidence whatsoever that HSS did not act in good faith (or that it acted "willfully") in classifying the Executive Assistant position as exempt.   In fact, all of the evidence is to the complete contrary and demonstrates HSS's commitment to understanding and adhering to the law on issues of proper classification.

For all of these reasons, liquidated damages are not warranted under either state or federal law, and Counts I and II of Hinds's Complaint should, therefore, be dismissed.

---

[9] The salary basis test provides that to "qualify as an exempt executive, administrative or professional employee" under the FLSA "an employee must be compensated on a salary basis at a rate of not less than $455 per week."   29 C.F.R. § 541.600(a).   Notably, in a recent opinion, the Supreme Court stated that individuals earning "more than $70,000 per year . . . *are hardly the kind of employees that the FLSA was intended to protect.*"   *Christopher*, 132 S.Ct. at 2173 (emphasis added); *Kadden,* 2012 WL 4354781, at *8 (same).

**3.**     **Even if this Court were to find that Hinds did not waive her liquidated damages claim, or that her claims have merit, she would not be entitled to a double recovery**

Finally, even if this Court were to conclude that Hinds did not waive her state liquidated damages or that her state and federal claims have merit, Hinds would not, as a matter of law, be entitled to a double recovery of liquidated damages under both statutes. Indeed, "'the liquidated' damages available under the state statute compensates the exact same harm [as the federal statute] – namely, the harm caused by the defendant's [alleged] culpable state of mind." *Yin v. Kim*, 07 Civ. 1236, 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008). "As a result, it [is] improper to award [plaintiff] both forms of compensation for the same harm." *Id.* (awarding plaintiff liquidated damages under NYLL only and not FLSA); *see also Marin v. JMP Restoration Corp.*, 09 Civ. 1384, 2012 WL 4369748, at *9, n. 6 (E.D.N.Y. Aug. 24, 2012) ("plaintiff cannot doubly recover either the unpaid wages or liquidated damages under both [the NYLL and the FLSA] for the same claims"); *Jin v. Pacific Buffet House, Inc.*, 06 Civ. 579, 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009) (refusing to award plaintiff liquidated damages under both FLSA and NYLL because "the FLSA is four times the award under state law, and thus is more than sufficient to satisfy any punitive purpose the state law is intended to serve"); *Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 WL 313483, at *29 (S.D.N.Y. Feb. 1, 2007) (not allowing double recovery and only awarding liquidated damages under state law with respect to claims that were not available under federal law).

**B.**     **Hinds Cannot Establish a *Prima Facie* Case of Retaliation and Cannot Rebut the Legitimate, Non-Retaliatory Reasons Articulated by HSS for Taking the Actions About Which She Complains, or Prove Pretext**

The FLSA's anti-retaliation provision makes it unlawful to discharge or in any other manner discriminate against an employee because such employee has "filed any complaint or instituted or caused to be instituted any proceeding under or related to [chapter 8 of the Act], or

has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  29 U.S.C. § 215(a)(3).  The NYLL's anti-retaliation provision makes it unlawful, in part, to "discharge, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."  N.Y. LAB. LAW § 215(1)(a) (eff. Nov. 24, 2009, through Apr. 9, 2011).

The three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is applicable to FLSA and NYLL retaliation claims.  *See Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Azkour*, 2012 WL 402049, at *4.  Hinds, therefore, has the initial burden of establishing a *prima facie* case of retaliation by showing (1) participation in protected activity known to HSS; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action.  *See id.*  If Hinds satisfies her initial burden, which she cannot, HSS need only articulate a legitimate, non-retaliatory reason for the adverse employment actions about which she complains.  *See id.*; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  Once the *prima facie* case is overcome by HSS in this way, then the presumption raised by Hinds in initially satisfying her *prima facie* case drops out, and she must then point to a disputed issue of material fact whereby she could prove at trial that the reasons offered by HSS are not the real reasons for its actions, but rather, a pretext for retaliation.  *See id.*  To do so, Hinds must show <u>both</u> that the reason is false <u>and</u> that retaliation was the real reason.  *See id.*  The burden remains at all times with Hinds, and because she cannot satisfy her burden, HSS is entitled to summary judgment.

      1.        **Hinds cannot establish a *prima facie* case of retaliation**

      (a)        ***Hinds did not engage in FLSA-protected activity, thereby requiring dismissal of her federal retaliation claim under Count IV of the Amended Complaint, as a matter of law***

In *Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993), the Second Circuit clearly held that the plain language of the FLSA's anti-retaliation provision "limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Lambert* remains the controlling law and courts in the Second Circuit routinely hold that intra-corporate complaints raised to private employers do not constitute protected activity under § 215 of the FLSA. *See, e.g., Hyunmi Son v. Reina Bijoux, Inc.*, 823 F.Supp.2d 238, 244 (S.D.N.Y. 2011) ("The Second Circuit has held that only the filing of formal complaints to a government authority is protected under the FLSA"); *Dunn v. City Univ. of N.Y.*, 11 Civ. 8210, 2012 WL 5511607, at *4 (S.D.N.Y. Nov. 14, 2012) ("It is clear that in the Second Circuit, Dunn's . . . complaints to her supervisors do not suffice as a protected activity under the FLSA."); *Graves v. Deutsche Bank Sec. Inc.*, No. 07 Civ. 5471, 2010 WL 997178, at *4 (S.D.N.Y. Mar. 18, 2010) ("[T]he FLSA bars discrimination only when the retaliation is in response to a formal complaint lodged with the Department of Labor."); *Greathouse v. JHS Security, Inc.*, 11 Civ. 7845, 2012 WL 5185591, at *5 (S.D.N.Y. Oct. 19, 2012) ("[C]ourts in this circuit have consistently invoked *Lambert* to dismiss FLSA retaliation complaints under similar circumstances [of an informal complaint made to a supervisor]."); *Duarte v. Tri–State Physical Med. & Rehab., P.C.*, 11 Civ. 3765, 2012 WL 2847741, at *3 (S.D.N.Y. July 11, 2012) ("[T]he holding of *Lambert* vis-à-vis intra-company complaints remains binding precedent on this Court."); *Flick v. Am. Fin. Res.*, 10 Civ. 3084, 2012 WL 5386157, at *7 (E.D.N.Y. Oct. 31, 2012) (granting summary judgment to employer because internal company complaints are not protected).

It is undisputed that the only "complaint" made by Hinds is her October 21, 2010 inquiry to the Human Resources Department about the classification of her position.  She admits that she simply "raised the question" about the classification of her position (Hinds Dep. at 8, 15, 34) and asked "to clarify with HR [her] status as an Exempt vs. Non-Exempt employee" (56.1 Stmt. ¶ 39, Ex. R.)  She did not file, and does not allege that she filed, nor has she presented any evidence proving that she filed, a formal complaint with the Department of Labor or any other governmental agency.  (Am. Compl. ¶¶ 15, 61-62.)  Pursuant to *Lambert* and its progeny, Hinds has not engaged in protected activity as a matter of law.

Accordingly, summary judgment must be granted in favor of HSS on Hinds's federal retaliation claim under Count IV of the Amended Complaint, leaving only her state retaliation claim under the NYLL under Count II (addressed below).

> **(b)** ***With the exception of her termination, Hinds did not suffer an adverse employment action, thereby requiring dismissal of her state retaliation claim under Count III of the Amended Complaint as to all non-termination-related allegations***

To allege an adverse employment action under § 215 of the NYLL, a plaintiff must demonstrate that, "'using an objective standard . . . the total circumstances of [her] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.'"  *Castagna v. Luceno*, No. 09 Civ. 9332, 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011) (quoting *Shaw v. Baldowski*, 192 Misc.2d 635, 747 N.Y.S.2d 136, 144 (Sup.Ct. Albany Cnty. 2002)).  According to the statute itself, adverse employment actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  (*Id*.)  "'Incidents that are relatively minor and infrequent will not meet [this] standard."  *Id.* (quoting *Shaw*, 747 N.Y.S.2d at 144)).  With the exception of her termination, Hinds suffered no adverse employment action.

Indeed, courts routinely hold that alleged employment actions similar to the actions alleged by Hinds—namely, the alleged "silent treatment" by Rice, Rice's alleged "over-enforcement" of HSS policies, and the filing of legitimate counterclaims based on undisputed facts[10]—do not constitute actionable conduct under the NYLL and other comparable anti-retaliation statutes.  *See, e.g., Carpenter v. City of Torrington*, 100 Fed. Appx. 858, 860 (2d Cir. 2004) ("silent treatment" does not amount to a "materially adverse change in the terms and conditions of employment"); *Mabry v. Neighborhood Defender Serv.*, 769 F.Supp.2d 381, 393-94 (S.D.N.Y. 2011) (minor alteration of job responsibilities and allegation that plaintiff's supervisor did not verbally speak to him in over one year were not sufficient to establish adverse employment action for purposes of retaliation claim); *Danieu v. Teamsters Local 264*, 08 Civ. 00500S, 2011 WL 1259839 (W.D.N.Y. Mar. 31, 2011) ("It is well established ostracism and isolation at work is not enough to constitute an adverse employment action."); *Boyd v. Presbyterian Hosp.*, 160 F.Supp.2d 522, 536-37 (S.D.N.Y.2001) ("gossip," "false accusations" and "hyperintensified observations" were not adverse employment actions); *Castagna*, 2011 WL 1584593, at *13 (occasional ridiculing and name-calling not adverse employment action under NYLL); *Hill v. Rayboy-Brauestein*, 467 F.Supp.2d 336, 345-55 (S.D.N.Y. 2006) (enforcing vacation policy as to plaintiff that required back-up documentation was not adverse employment action); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir.1998) ("it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation"); *Orr v. James D. Julia, Inc.* 07 Civ. 51-B-W, 2008 WL 2605569, at *16 (D. Me. 2008) ("The mere temporal

---

[10] Indeed, the entire notion that HSS's filing of counterclaims was in retaliation for Hinds filing a lawsuit is preposterous considering the egregious conduct that constitutes the underlying basis of those counterclaims—Hinds's repeated and deliberate access, review, printing, taking, and then use of her supervisors' e-mails and confidential, privileged, and work product documents belonging to HSS—conduct which has been admitted by Hinds and which fully supports the only two remaining counterclaims in this action.  (HSS has offered to voluntarily dismiss the remaining three counterclaims—Electronic Communications Privacy Act, conversion, and misappropriation—and has presented a stipulation for same to Hinds for signature and filing with the Court. (Traub Aff. n. 1.)

relationship between [a plaintiff's] commencement of [an] action and the defendants' filing of . . . counterclaim[s] does not generate a genuine issue of retaliatory motive, especially where [a plaintiff] fails to demonstrate in his presentation that the counterclaims are baseless on factual or legal grounds"); *Ergo v. Int'l Merchant Services, Inc*., 519 F.Supp.2d 765, 781 (N.D. Ill. 2007) (only circumstance in which filing of counterclaim might constitute retaliation is where counterclaim is totally baseless).

Simply put, Hinds has presented no evidence that she suffered an adverse employment action under state law (other than her termination, addressed below), and for this reason, her state retaliation claim under Count III of the Amended Complaint, as it relates to these non-termination-related allegations, should be dismissed, as a matter of law.

> **(c)** **_Hinds cannot establish a causal connection between the only adverse employment action about which she complains (her February 2011 termination)[11] and her October 2010 inquiry regarding the classification of her position, thereby requiring dismissal of her state retaliation claim under Count III of the Amended Complaint, in its entirety_**

It appears that Hinds's only "evidence" of causation is that her position was eliminated after she inquired about the classification of her position.  However, temporal proximity alone "cannot support an inference of causal connection unless the alleged retaliatory action and the protected activity were 'very close' in time.'"  *Perry v. NYSARC, Inc*., 424 Fed. Appx. 23, 26 (2d

---

[11] Moreover, Hinds's allegations that she was held "to a different standard" than other nonexempt employees once she was re-classified, in addition to failing to constitute an adverse employment action, are also baseless and unsupported.  To be "similarly situated," the individuals with whom Hinds attempts to compare herself "must be similarly situated in all material respects."  *Shumway v. United Parcel Serv., Inc*., 118 F.3d 60, 64 (2d Cir. 1997). Hinds admits that none of her alleged comparators worked for Dr. Crow—rather, she admits that her alleged comparators (nonexempt "office managers") worked for other doctors within the Department of Medicine, were responsible for "patients and scheduling" (unlike Hinds), and were not part of Dr. Crow's administrative staff. (Hinds Dep. at 105-06.)  Hinds further admits that the timekeeping for these office managers was handled by Cookie Reyes, who, according to Hinds, handled that timekeeping "completely differently" than Rice, who handled the timekeeping for _both_ Hinds and the other employee in Dr. Crow's office (not just Hinds).  (*Id*. at 208-09.) Moreover, when asked for the names of her alleged comparators, Hinds could not recite a single name, even when pressed repeatedly.  (*Id*. at 207-08.)  By her own admissions, Hinds cannot establish that she was similarly situated "in all material respects" to an unknown number of unnamed office managers, and thus, has no evidence to support her allegation that she was "held to a different standard."

Cir. May 27, 2011) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).  A "four-month interval between protected activity and alleged retaliation is insufficient in itself to establish the causal connection necessary to support a retaliation claim."  *Id.*; *Dixon v. Int'l Federation of Accountants*, 416 Fed. Appx. 107, 111 (2d Cir. 2011) (four-month period between plaintiff's complaint of discrimination and termination was not sufficient to establish causation); *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (four-month time lapse between protected activity and alleged adverse action was insufficient to defeat summary judgment on causation issue).

Additionally, mere suspicion and conjecture or a "feeling" as to a causal connection, which is all Hinds offers here, will not suffice as evidence to defeat summary judgment.  *See Kulak*, 88 F.3d at 71 ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."); *Lee v. Sony BMG Music Entm't*, 07 Civ. 6733, 2010 WL 743948, at *9 (S.D.N.Y. March 3, 2010) ("Plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'").  Indeed, all of the evidence contradicts Hinds's suspicions and "feelings."  It is undisputed that HSS bent over backwards for Hinds by, among other things, immediately treating her as a nonexempt employee following her inquiry, reclassifying her at the conclusion of its investigation, paying her all of the overtime she claimed to have worked plus interest (including ensuring that her calculations accounted for missed lunches), and continuing to employ her in a role that HSS simply did not need in the hopes that Hinds would take on the higher-level responsibilities that Dr. Crow felt she was capable of, further rebutting any notion of retaliatory motive.  (56.1 Stmt. ¶¶ 44, 55-57.) Additionally, Hinds herself admitted that, throughout her employment, she had a positive working relationship with Dr. Crow, ***who alone made the decision to eliminate Hinds's***

*position*, testifying that she "loved working for" Dr. Crow and would want to work for her again. (Hinds Dep. at 358.)  Finally, HSS maintains strict non-retaliation policies, which prohibit "any act of retaliation or reprisal against an employee who in good faith reports a violation of law, regulation, standard, hospital policy or Code of Conduct."  (56.1 Stmt. ¶ 4, Ex. CC (p. 6).)

Accordingly, summary judgment must be granted in favor of HSS as to Hinds's state retaliation claim under Count III of the Amended Complaint.

### 2.   Hinds cannot rebut the legitimate, non-retaliatory reasons articulated by HSS for eliminating her position, or show pretext

Even if Hinds could prove a *prima facie* case on either her federal or state retaliation claims (which, as a matter of law, she clearly cannot), Hinds still cannot survive summary judgment because she cannot rebut the legitimate, non-retaliatory reasons articulated by HSS for eliminating her position, or show pretext.

#### (a)    *HSS's legitimate, non-retaliatory reasons*

As set forth in more detail in the 56.1 Statement, it is undisputed that when Dr. Crow began working as Physician-in-Chief of the Department of Medicine, she intended to hire an experienced Executive Assistant who could, and would, take on considerable responsibility and independence in order to assist Dr. Crow with her own complex role.  (56.1 Stmt. ¶¶ 11-20.)  Dr. Crow needed an Executive Assistant who could take an "independent and creative role" to work closely with her and other members of the department to address the "strategic plan" that she had developed, as well as assist with meeting her "goals and aspirations for developing a very productive [D]epartment of [M]edicine."  (*Id.* ¶ 17.)  Indeed, it was never the intention to have a mere secretarial role within the department, and in fact, there was no need for such a role, given that an Office Manager—a position for which Dr. Crow was simultaneously recruiting—would cover many of those tasks.  (*Id.* ¶ 13, 36-37.)  Dr. Crow hired Hinds for the more demanding

position based in part on Hinds's strong academic credentials and Hinds's stated enthusiasm for the developing role.  (*Id.* ¶ 27.)

For the first six months following her hire, however, Hinds ended up performing (and, incidentally, performing well) a number of clerical job responsibilities and not spending as much time on the higher-level functions that had been intended for her and that were set forth in her original job description.  (*Id.* ¶¶ 36, 54.)  But Dr. Crow believed Hinds was capable of more and believed that she was encouraging Hinds to do more, as they both settled into their new jobs. (*Id.* ¶ 38.)  Accordingly, in response to Hinds's October 2010 inquiry: (1) the Human Resources Department commenced an investigation into the work that Hinds had been performing during her first six months so that they could ascertain whether she had, in fact, been operating more as a nonexempt employee and, thus, would be entitled to past due overtime; and (2) Dr. Crow and Rice simultaneously revisited the job description so that the expectations and responsibilities of the job (to the extent they had not previously been made clear enough to Ms. Hinds) could be discussed with Hinds and better explained in writing.  (*Id.* ¶¶ 45, 52.)

On December 1, 2010,[12] therefore, Dr. Crow and Slawitsky met with Hinds and provided her with her 6-month performance review,[13] as well as the clarified job description for her review.  (*Id.* ¶ 51.)  HSS gave Hinds the opportunity to review the clarified job description for

---

[12] In advance of this meeting, Dr. Crow had expressed to Slawitsky that, although she felt she had been clear with Ms. Hinds as to what her vision was for the role (and, in fact, that vision had been delineated in the original job description for the role), perhaps she should take this opportunity to further clarify her expectations in writing, to the extent Ms. Hinds claimed to have not previously understood.  (56.1 Stmt. ¶ 49.)

[13] Notably, the performance review stated in part:

> In view of the evolution of the [Physician-in-Chief] position and the Executive Assistant position, the responsibilities of the latter position have been further defined and will be reviewed with Ms. Hinds, including the need for appropriate delegation of tasks to the Office Manager [Nereida Baez] and clear definition of which tasks will be covered by the Executive Assistant and which by the Office Manager.

(*Id.* ¶ 50, Ex. T.)

two reasons: (1) so Hinds identify those functions that she had been performing to date (for the purpose of assessing the classification of her position, retroactively); and (2) so the department could, in a more clear fashion, identify those functions it expected the role to perform (for the purpose of clarifying the position, to the extent there had been a misunderstanding about it to date). (*Id.* ¶ 52.)  Shockingly, Hinds thumbed her nose at this opportunity and prepared a 6-page, bullet-by-bullet response, rejecting virtually every single duty and responsibility set forth in the clarified job description (even those that had been included in the original job description, such as managing Nereida Baez ("Baez"), the Office Manager, as well as those functions that she had already been performing).  (*Id.* ¶ 53, Ex. V.)  In addition to rejecting almost every job duty associated with her position, Hinds ridiculed the contents of the clarified job description and sarcastically wrote that a "**cursory glance through these job duties would lead one to think I run the Department**" and "**the duties actually read like an amalgam of the work done by at least five people; Dr. Crow, Laughlin Rice, Nereida Baez, Outside Consultants and me.**" (*Id.*) (emphasis in original).

Notwithstanding Hinds's insubordinate rejection of the clarified job description and Dr. Crow's needs for a higher-level position, Dr. Crow decided to continue to employ Hinds in the lower-level position she had created for herself, in the hopes that she would become motivated to take on the higher-level functions that Dr. Crow believed she was capable of, which she was hired to perform, and which Dr. Crow needed.  (*Id.* ¶ 57.)  In other words, Dr. Crow, who thought Hinds had great potential, decided to "give it a shot", thereby putting Hinds's wishes as to what work she would perform above Dr. Crow's own departmental business needs, which did not require a secretarial role like the one Hinds had made it clear was the only job she would perform.  This is hardly evidence of retaliation.

Nonetheless, by February 2011, it became clear that Hinds's role (as she had crafted it) was duplicative of the Office Manager role held by Baez,[14] and the clerical functions—the only functions Hinds had agreed to perform—were not sufficient to assist Dr. Crow with respect to accomplishing her goals for the department. (*Id*. ¶ 64.) Dr. Crow, therefore, decided to eliminate Hinds's position so that she could fill the higher-level position she had always envisioned and required.[15] (*Id*. ¶ 65.) Dr. Crow notified Hinds of the elimination of her position on February 17, 2011. (*Id.* ¶ 67.)

Eliminating a position based on the fact that the job responsibilities of the position do not meet the business and operational needs of a department is a legitimate, non-retaliatory reason for a termination. *See, e.g., Donaldson v. Merrill Lynch & Co*., 794 F. Supp. 498, 505-08 (S.D.N.Y. 1992) (elimination of two "associate" positions in order to create higher level "strategist" position that met employer's business needs was legitimate and non-discriminatory); *Dister v. Continental Group, Inc*., 859 F.2d 1108 (2d Cir. 1988) (elimination of position based on business priorities was legitimate and non-discriminatory); *Viola v. Philips Medical Sys. of North Am.*, 42 F.3d 712, 717-18 (2d Cir. 1994) (elimination of position due to employer's business needs was legitimate and non-discriminatory, even where employer subsequently hired new employee to perform responsibilities similar to eliminated position in another expanded department); *DiCola v. SwissRe Holding, Inc.*, 996 F.2d 30, 31, 33 (2d Cir. 1993) (elimination of "Manager of Office Services," and transfer of that position's duties to "Office Services Supervisor" was legitimate and non-discriminatory).

---

[14] In fact, Hinds admits the duplicative nature of her role when, in her deposition, she repeatedly compares herself to nonexempt Office Managers throughout the Department of Medicine. (Hinds Dep. at 106.)

[15] And, indeed, Dr. Crow did fill the role, and it exists today in the way it was always intended to exist. On or about September 6, 2011, after an extensive and detailed search, Dr. Crow hired Anna Salem for the position of Manager, Office of the Physician-in-Chief within the Department of Medicine. (56.1 Stmt. ¶ 69-70.) Ms. Salem performs the high-level job responsibilities that Dr. Crow had envisioned for the position Hinds originally held as far back as the Spring of 2010 and which she had hoped Hinds would perform. (*Id*.)

      **(b)**      *Hinds's inability to rebut HSS's legitimate, non-retaliatory reasons for her termination, or show pretext*

Because HSS has articulated a legitimate, non-retaliatory reason for Hinds's termination, Hinds must point to sufficient evidence to support a rational finding that the legitimate non-retaliatory reasons proffered were false <u>and</u> that retaliation "was the real reason for the employment action." *Mullins*, 626 F.3d at 53-54.  Hinds can do neither.

Indeed, Hinds offers nothing more than suspicions and unfounded accusations about various individuals at HSS "conspiring to deny [her] overtime pay [and] to retaliate against [her] for seeking overtime pay" (Traub Aff., Ex. C (p. 4).), or leading her to believe that they were not acting "honorably" (Hinds Dep. at 89-90).  Hinds even goes so far as to make bold statements, without any evidence whatsoever, accusing four HSS employees of engaging in some kind of "criminal activity."  (Hinds Dep. at 90.)  None of these suspicions and unfounded accusations are sufficient to raise a genuine issue of material fact necessary to defeat summary judgment.  *See Kulak*, 88 F.3d at 71 ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."); *Lee*, 2010 WL 743948, at *9 ("Plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'").  Simply put, Hinds's burden requires her to do more—she must point to evidence that the reasons articulated by HSS are false <u>and</u> that the real reason was retaliation.  She comes nowhere close to meeting this burden.

Indeed, to the extent Hinds simply disagrees with HSS's decision to eliminate her position—the lower-level, secretarial position she had created for herself—in favor of a higher-level, Executive Assistant position more akin to the vision Dr. Crow had always had for her department and which exists today, her disagreement is insufficient to prove pretext. *See Jimoh v. Ernst & Young*, 908 F.Supp.220, 226 (S.D.N.Y. 2005) ("As a matter of law, an employee's

disagreement with an employer's business decision is insufficient to prove discriminatory conduct."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 104 (S.D.N.Y. 2012) ("a plaintiff's factual disagreement with the validity of the employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact"). Moreover, it "is not the function of a fact-finder [or Hinds] to second-guess business decisions or to question a corporation's means to achieve a legitimate goal." *Dister*, 859 F.2d at 1116; *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.").

Finally, Hinds cannot survive summary judgment on the sole fact that her position was eliminated sometime after her inquiry. "Mere temporal proximity, by itself, is insufficient to support a claim of retaliation at the summary judgment stage," especially "where the defendant proffers a legitimate reason for the plaintiff's discharge." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp.2d 257, 277, n.14 (S.D.N.Y. 2007); *Vosatka v. Columbia Univ.,* 04 Civ. 2936, 2005 WL 2044857, at *10 (S.D.N.Y. Aug.25, 2005) (timing of events alone, even if perhaps sufficient to meet *prima facie* burden, cannot defeat summary judgment in face of defendant's proffered legitimate reason); *Jowers v. Family Dollar Stores, Inc.*, 09-2620, 2010 WL 3528978, *3 (S.D.N.Y. Aug. 16, 2010) (same). The fact remains that Hinds's position—as she had single-handedly re-crafted it—while being something that Dr. Crow was willing to try for a period of time, simply was not meeting the departmental needs and was not a position that would foster the growth of the department. The position was, therefore, eliminated altogether, and in fact, does not exist today. (56.1 Stmt. ¶ 69-70.)

Based on the foregoing, Count III of Hinds's Amended Complaint should be dismissed.

#### IV.     EVEN IF HINDS COULD SURVIVE SUMMARY JUDGMENT ON ANY OF HER CLAIMS, HSS IS ENTITLED TO A DECLARATORY JUDGMENT AS TO HER RECOVERY OF DAMAGES

Even if Hinds could survive summary judgment as to any of her claims, which she cannot, her serious misconduct bars relief and entitles HSS to a declaratory judgment limiting her recovery of damages.[16]   The U.S. Supreme Court has held that once an employer learns of wrongdoing that would have resulted in the discharge of an employee, front pay is not an appropriate remedy, and back pay, if any, should be limited to the "date of the unlawful discharge to the date the new information was discovered."   *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995);[17] *Greene v. Coach, Inc.*, 218 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2002).   As set forth above and more fully in HSS's Rule 56.1 Statement, HSS discovered on or about May 10, 2011, that Hinds had engaged in the terminable offenses of repeatedly reviewing, for a period of at least 4 months, Dr. Crow's and Rice's privileged and confidential e-mails containing legal advice, mental impressions, and work product of in-house and outside counsel; printing, copying, and removing these documents from HSS premises; and then using the documents to form the basis of her allegations and litigation strategy.   Hinds's misconduct directly violates the "Rules of Conduct" contained in HSS's Human Resources Policies and Procedures, which prohibits "[t]heft, fraud, misappropriation, or unauthorized possession or use of property belonging to the Hospital or to any employee," as well as the Code

---

[16] HSS's summary judgment motion is an appropriate vehicle to make this requested declaration.  *See, e.g., Greene v. Coach, Inc.*, 218 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2002); *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996) (affirming summary judgment entered by trial court on after-acquired evidence defense); *Colpean v. Ajilon, L.L.C.*, 05 Civ. 73710, 2007 WL 1017340, at *9 (E.D. Mich. Mar. 30, 2007) (granting summary judgment on substantive discrimination claims and concluding that after-acquired evidence doctrine would additionally limit remedies, if claims were reinstated).

[17] Indeed, the facts of this case are similar to those in the seminal *McKennon* case.

of Conduct, and constitutes an egregious offense for which Hinds would have been immediately terminated.  (56.1 Stmt. ¶ 82-84.)

By virtue of the after-acquired evidence doctrine, therefore, Hinds's maximum claim for back pay damages is limited to the period of February 17, 2011, the date her position was eliminated, to May 10, 2011, the date HSS discovered her wrongdoing.  *See, e.g., McKennon*, 513 U.S. at 362; *Greene*, 218 F. Supp. 2d at 413-14.  Should summary judgment not be granted on any claims, therefore, an Order should be entered limiting Hinds's recovery of damages to the roughly 3-month period between February 17, 2011, and May 10, 2011, and barring economic damages after May 10, 2011.

## CONCLUSION

Based on the foregoing, HSS respectfully requests that the Court grant summary judgment in favor of HSS on Count I of HSS's Counterclaims and on all of Hinds's claims.

Dated: New York, New York
         January 31, 2013

EPSTEIN BECKER & GREEN, P.C.

By:   s/ Amy J. Traub
      Amy J. Traub
      Jill Barbarino

250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

*Attorneys for Defendant Hospital for Special
Surgery a/k/a New York Society for the Relief of
the Ruptured and Crippled, Maintaining The
Hospital for Special Surgery*